**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Case No. _____ |
| v. | ) ) JURY TRIAL DEMANDED ) |
| NEON THERAPEUTICS, INC., ROBERT BAZEMORE, CARY PFEFFER, ROBERT KAMEN, ERIC LANDER, HUGH O'DOWD, STEPHEN SHERWIN, ROBERT TEPPER, MERYL ZAUSNER, BIONTECH SE, and ENDOR LIGHTS, INC., | ) CLASS ACTION ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on January 16, 2020 (the "Proposed Transaction"), pursuant to which Neon Therapeutics, Inc. ("Neon" or the "Company") will be acquired by BioNTech SE ("Parent") and Endor Lights, Inc. ("Merger Sub," and together with Parent, "BioNTech").

2. On January 15, 2020, Neon's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with BioNTech. Pursuant to the terms of the Merger Agreement, Neon's stockholders will receive 0.063 American Depository Shares ("ADS"), with each ADS representing one ordinary share of Parent, for each share of Neon common stock they own.

3.      On April 2, 2020, defendants filed a proxy statement/prospectus (the "Prospectus") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for May 4, 2020.

4.      The Prospectus omits material information with respect to the Proposed Transaction, which renders the Prospectus false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Prospectus.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Neon common stock.

9.      Defendant Neon is a Delaware corporation and maintains its principal executive offices at 40 Erie Street, Suite 110, Cambridge, Massachusetts 02139.  Neon's common stock is

traded on the NASDAQ Global Select Market under the ticker symbol "NTGN."

10. Defendant Robert Bazemore is a director of the Company.

11. Defendant Cary Pfeffer is Chairman of the Board of the Company.

12. Defendant Robert Kamen is a director of the Company.

13. Defendant Eric Lander is a director of the Company.

14. Defendant Hugh O'Dowd is Chief Executive Officer, President, and a director of the Company.

15. Defendant Stephen Sherwin is a director of the Company.

16. Defendant Robert Tepper is a director of the Company.

17. Defendant Meryl Zausner is a director of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Parent is a *Societas Europaea* organized and existing under the laws of Germany and a party to the Merger Agreement.

20. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

**CLASS ACTION ALLEGATIONS**

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Neon (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of January 14, 2020, there were approximately 28,729,725 shares of Neon common stock

outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

28. Neon is a biotechnology company that develops novel neoantigen-targeted T cell therapies, dedicated to transforming the treatment of cancer by directing the immune system towards neoantigens.

4

29. The Company is using its neoantigen platform to develop both personal and precision neoantigen-targeted T cell therapy candidates.

30. The Company's most advanced program is NEO-PTC-01, which is its personalized neoantigen-targeted T cell therapy candidate consisting of multiple T cell populations targeting the most therapeutically relevant neoantigens from each patient's tumor.

31. On January 15, 2020, Neon's Board caused the Company to enter into the Merger Agreement.

32. Pursuant to the terms of the Merger Agreement, Neon's stockholders will receive 0.063 ADSs for each share of Neon common stock they own.

33. According to the press release announcing the Proposed Transaction:

> BioNTech (Nasdaq: BNTX, "BioNTech") and Neon Therapeutics, Inc. (Nasdaq: NTGN, "Neon") today announced that they have entered into a definitive merger agreement under which BioNTech will acquire Neon in an all-stock transaction valued at approximately $67.0 million. Neon is a biotechnology company developing novel neoantigen-based T cell therapies. Upon closing, it will operate as a subsidiary of BioNTech, a global clinical-stage biotechnology company focused on patient-specific immunotherapies for the treatment of cancer and other serious diseases. The transaction will combine two organizations with a common culture of pioneering translational science and a shared vision for the future of cancer immunotherapy. . . .
>
> Transaction Details
>
> Under the terms of the definitive agreement, Neon will, following consummation of the acquisition, merge with Endor Lights, Inc., a Delaware corporation and a direct, wholly-owned subsidiary of BioNTech and become a wholly-owned subsidiary of BioNTech. At closing, BioNTech will issue, and Neon shareholders will receive 0.063 American Depositary Shares (ADS) (each ADS representing one ordinary share of BioNTech) in exchange for each of their shares of Neon. The exchange ratio implies a deal value of $67 million, or $2.18 per share of Neon, based on the closing price of BioNTech's ADSs of $34.55 on Wednesday, January 15th, 2020.
>
> The transaction was unanimously approved by both BioNTech's and Neon's boards of directors. The transaction, which is expected to close during the second quarter of 2020, is subject to approval of Neon's shareholders and the satisfaction of

customary closing conditions. Certain stockholders of Neon owning approximately 36% of the outstanding Neon shares have entered into voting agreements, pursuant to which they have agreed, among other things, and subject to the terms and conditions of the agreements, to vote in favor of the Neon acquisition.

Ondra Partners is acting as the exclusive financial advisor to Neon and Goodwin Procter LLP is acting as legal counsel to Neon. Duff & Phelps LLC provided a fairness opinion to Neon's board of directors in connection with the transaction. Covington & Burling LLP is acting as legal counsel to BioNTech.

*The Prospectus Omits Material Information, Rendering It False and Misleading*

34. Defendants filed Prospectus with the SEC in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for May 4, 2020.

35. As set forth below, the Prospectus omits material information with respect to the Proposed Transaction, which renders the Prospectus false and misleading.

36. First, the Prospectus omits material information regarding the Company's and BioNTech's financial projections.

37. With respect to the Company's financial projections, the Prospectus fails to disclose: (i) all line items used to calculate (a) EBITDA, (b) EBIT, and (c) Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

38. The Prospectus also fails to disclose BioNTech's financial projections.

39. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

40. Second, the Prospectus omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Duff & Phelps LLC ("DP").

41. With respect to DP's Discounted Cash Flow Analysis, the Prospectus fails to disclose: (i) the standalone, after-tax free cash flows that Neon was forecasted to generate during fiscal years ending December 31, 2020 through 2050 as used by DP in the analysis and all underlying line items; (ii) the individual inputs and assumptions underlying the discount rates ranging from 12.5% to 13.5%; and (iii) cash and equivalents, estimated working capital net deficit and other liabilities, and the estimated value of the outstanding Neon options.

42. With respect to DP's Historical Premium Analysis, the Prospectus fails to disclose: (i) the transactions observed by DP in the analysis; and (ii) the premiums paid in the transactions.

43. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

44. Third, the Prospectus omits material information regarding the engagements of DP and the Company's additional financial advisor, Ondra Partners ("Ondra").

45. With respect to DP, the Prospectus fails to disclose the timing and nature of the past services DP provided to BioNTech and its affiliates, as well as the amount of compensation DP received for providing such services.

46. With respect to Ondra, the Prospectus fails to disclose: (i) the amount of compensation Ondra has received or will receive in connection with its engagement; (ii) the amount of Ondra's compensation that is contingent upon the consummation of the Proposed Transaction; (iii) whether Ondra has performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received or to be received by Ondra for providing such services.

47. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

48. The omission of the above-referenced material information renders the Prospectus false and misleading, including, *inter alia*, the following sections of the Prospectus: (i) Background of the Merger; (ii) Neon's Reasons for the Merger; (iii) Certain Prospective Financial Information Reviewed by the Neon Board and Neon's Financial Advisor; and (iv) Opinion of Neon's Financial Advisor.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Neon

50. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51. The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Neon is liable as the issuer of these statements.

52. The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

53. The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

54. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

55. The Prospectus is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

56. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

57. Because of the false and misleading statements in the Prospectus, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and BioNTech

58. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59. The Individual Defendants and BioNTech acted as controlling persons of Neon within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of Neon and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

60. Each of the Individual Defendants and BioNTech was provided with or had unlimited access to copies of the Prospectus alleged by plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Prospectus.

62. BioNTech also had supervisory control over the composition of the Prospectus and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Prospectus.

63. By virtue of the foregoing, the Individual Defendants and BioNTech violated Section 20(a) of the 1934 Act.

64. As set forth above, the Individual Defendants and BioNTech had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

  B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

  C. Directing the Individual Defendants to disseminate a Prospectus that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

  D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

  E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: April 7, 2020        **RIGRODSKY & LONG, P.A.**

            By: */s/ Gina M. Serra*
              Seth D. Rigrodsky (#3147)
              Brian D. Long (#4347)
              Gina M. Serra (#5387)
**OF COUNSEL:**         300 Delaware Avenue, Suite 1220
              Wilmington, DE 19801
**RM LAW, P.C.**         Telephone: (302) 295-5310
Richard A. Maniskas       Facsimile: (302) 654-7530
1055 Westlakes Drive, Suite 300   Email: sdr@rl-legal.com
Berwyn, PA 19312        Email: bdl@rl-legal.com
Telephone: (484) 324-6800     Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com      *Attorneys for Plaintiff*